HOUSTON BELT & TERMINAL RY. CO. v. BARGER. (No. 448.)

(Court of Civil Appeals of Texas. El Paso. May 13, 1915. Rehearing Denied May 27, 1915.)

1. NEGLIGENCE ☞101—INJURY TO RAILROAD EMPLOYÉ—DIRECTING VERDICT—COMPARATIVE NEGLIGENCE.

Verdict may not be directed for a railroad, sued for injury to its trainman, unless it can be said, as matter of law, not only that he was guilty, but that it was free, of contributory negligence; as in case of negligence of both damages are to be apportioned.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164, 167; Dec. Dig. ☞101.]

2. TRIAL ☞350—VERDICT—SPECIAL INTERROGATORIES—EVIDENTIARY FACT.

There need not be submitted to the jury a special issue on a matter which is not an ultimate or controlling fact, but merely a minor or evidentiary fact on the issues of negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ☞350.]

Appeal from District Court, Harris County; A. E. Amerman, Special Judge.

Action by Frank E. Barger against the Houston Belt & Terminal Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Andrews, Streetman, Burns & Logue, Coke K. Burns, and W. L. Cook, all of Houston, for appellant. John Lovejoy and Presley K. Ewing, both of Houston, for appellee.

WALTHALL, J. This suit was brought by appellee, Frank E. Barger, to recover damages on account of personal injuries sustained by him while in the employment of appellant, the Houston Belt & Terminal Railway Company, in the capacity as switchman, and alleged, in substance, that at the time of the accident causing his injuries he was in the ordinary discharge of the duties of his service in or about defendant's south yards at or near the city of Houston; that in the territory where he was engaged in said service appellant was maintaining a north-bound main line, and about westward of it a parallel south-bound main line, and that with the former it had a lead track which made a junction with said north-bound main line, and extended from it in a southeasterly direction, and into this lead line a number of its tracks ran entering such lead track from the east; that other employés of defendant, with plaintiff, composed the switching crew, including employés in charge of the switch engine, and the switching foreman then in control of other employés of the switching crew and work being done, with authority to direct the other employés of the switching crew in the performance of their duties; that said switching crew was under the command of said foreman engaged in making up a train on the north-bound main line, which was to be run out of such track at a distance of about a quarter of a mile on its main line; that in order to do the work the switch engine had to take cars off the track going into said lead line, and thence run them to said main north line or beyond, and switch them in on such line; that at the time of the injury to plaintiff two cars had, in the course of such switching work, been placed on said north line to the south of where the accident to plaintiff happened, and other cars had also been placed on this line to the north of said two cars, about fourteen in all; that plain-

tiff, in the ordinary discharge of his duties, was required to and did guard the south end of said cars on the north main line from trains that might be approaching thereon, and to open or adjust the knuckle at the north end of said two cars on said north main line track, which he attempted to do with the lever, but said knuckle was defective, and would not operate; that it was thereupon his duty to go between said cars so as to shake or manipulate said knuckle with his hand for process of adjustment, by which means a knuckle in such defective condition can sometimes be made to work; that while in the discharge of said service the cars to the north of said two cars, suddenly and unawares to him, moved back against the car he was attempting to adjust, catching him between the cars, causing his injuries; (in the twelfth paragraph) that when he went in between said cars the cars on the north main line to the north of said two cars were standing still, and just before he went in to adjust said coupling, he looked up and saw the switch engine engaged in making up said train on said lead line east of its junction with said north main line, running light, that is, with no cars attached; (thirteenth paragraph) that it was customary in the service, in making up a train such as this, and in the manner it was being made up, for the switch engine, in putting in the last cars it had of a string, to move them back attached to the engine, and not to put them in by kicking, detached from the engine, and, independent of such custom, such detached method was not reasonably safe under the circumstances set out; (fourteenth paragraph) that under said custom said engine, running light, on said lead line, was a practical signal to him that said cars on said main line would not be disturbed, and that he might safely go between them to perform the service of adjusting the knuckles, and upon such custom and information thus conveyed, and upon the exercise of due care by defendant and its employés for his safety, he relied in going between said cars to do such work, and had a right to rely.

In the further averments of the petition it alleged as the proximate cause of plaintiff's injuries two independent grounds of negligence on the part of defendant: (1) Negligence by its employés in charge of the switching engine in causing the last cars of the string being handled to be kicked, without warning or signal to plaintiff, uncontrolled and. detached from the engine, against the cars of the train standing on the main track, whereby, suddenly and unawares to plaintiff, he was caught between the cars where he was adjusting the knuckles and injured; (2) negligence by its employés, or its switching foreman, who had charge of the switching, in misdirecting or wrongly directing the work of moving the cars, so that such cars were improperly caused or permitted to be run on-

to said main line by kicking them back with great force and violence, whereby the cars between which plaintiff was adjusting the knuckles were suddenly and unawares to him brought together, and he thereby injured.

The petition then alleged that by reason of the facts alleged, constituting negligence, plaintiff suffered injuries to his right forearm and hand, rendering the arm and hand entirely and permanently useless for manual labor.

The defendant answered by a general demurrer, denials, general and special, covering the allegations of negligence, proximate cause, and the nature and extent of plaintiff's injuries. Defendant also by special pleas alleged assumed risk and negligence on plaintiff's part, either contributory or . the sole, proximate cause of the injuries sustained by him. Plaintiff by supplemental petition denied and met the affirmative issues pleaded by defendant. The court submitted the cause to the jury on special issues, and for their special verdict the jury found the facts as follows:

(1) That plaintiff was injured on or about May 27, 1913, substantially in the manner alleged.

(2) That plaintiff was then in the employment of the defendant as a switchman.

(3) That he was then engaged in the. ordinary course and discharge of the duties of his service under such employment.

(4) That defendant was then a corporation operating a railroad in this state.

(5) That plaintiff, at the time he claims to have been injured, was attempting to adjust a knuckle between standing cars of a train being made up on the alleged north main line.

(6) That while plaintiff was then so engaged the cars between which he was engaged were caused at that time to move.

(7) That plaintiff was by such movement caught between said cars and injured.

(8) That the movement of said cars, which were thus caused to move and injure plaintiff, was sudden and unawares to him. ,

(9) That the movement of such standing cars of the train being made up between which plaintiff claims he was engaged was caused by cars which were to be put into said train being kicked against said standing cars, that is, run against them detached from the engine and uncontrolled by it.

(10) The cars so kicked were the last of the string and cut in question.

(10a) That it was customary in the business as conducted by defendant, when making up a train such as above inquired about, to push in the last cars of a string or cut attached to the engine, instead of kicking them in.

(10b) That such custom applied, regardless of whether there was sufficient room to kick the cars in if desired, and regardless of whether there was other work for the

engine to do before finally coupling up and pulling on the train being made up.

(11) That the movement of said standing cars by the kicking of said last-mentioned cars was done by the persons who caused such movement of them without giving any warning or signal to plaintiff before the same happened.

(12) That the persons who caused such kicking and movement of the cars were in the employment of the defendant as part of its switching crew in that behalf.

(13) That such persons were then acting for defendant within the scope of such employment.

(14) That the act or conduct of said employés of defendant in kicking in said cars without warning or signal to plaintiff was negligence towards him; that is, a failure to exercise toward him such care as an ordinarily prudent person would have exercised under the same or similar circumstances.

(15) That such negligence was a proximate cause of alleged injuries to plaintiff.

(16) That said employés, in the exercise of ordinary care, could reasonably have foreseen or anticipated the alleged injury to plaintiff, or some like injury, as a natural and probable consequence of kicking in the cars complained of in the manner as done.

(17) That the cars complained of, which plaintiff claims were the last of the cut, were caused or permitted by defendant's engine foreman of the switching crew in question to be run by the kicking process into the north main line.

(18) That such engine foreman caused or permitted such movement of said cars to be made so as to strike said standing cars with great force and violence.

(19) That the movement of the complained of cars into said north main line was improper under the attendant circumstances.

(20) That such improper movement of the complained of cars was due to misdirection of the work of moving the cars in question by said engine foreman.

(21) That it was within the course and scope of said engine foreman's employment by defendant to control and direct such switching work for it.

(22) That such conduct of said engine foreman in misdirecting or wrongly directing the work of moving such cars was negligence, as before defined, on his part towards plaintiff.

(23) That such negligence on the part of said engine foreman was a proximate cause of alleged injuries to plaintiff.

(24) That a person of ordinary care, in the situation of said engine foreman on the occasion in question, could reasonably have foreseen or anticipated the alleged injury to plaintiff, or some like injury, as a natural and probable consequence of the misdirection of the work of moving the cars in question on his part.

(25) That the sum of money which, pres-

ently paid, would fully and fairly compensate plaintiff for injuries which he both alleged and proved to have suffered on the occasion in question (according to the measure submitted by the court) is $8,000.

(26) That plaintiff's said injuries did not proximately result from a risk, danger, or hazard, or from risks, dangers, or hazards, ordinarily incident to his employment.

(27) That plaintiff did not fail to use ordinary care by going between the cars, or placing his hand in a position of danger upon or about the coupling apparatus, at a time when he knew or must necessarily have known that the two cars in question had not been switched to the main track.

(28) That, if plaintiff noted the engine running light just before he went in between the cars, and thereupon assumed that the last two cars of the cut had been placed, such assumption was not negligence on his part.

(29) That plaintiff, on the occasion in question, did not go in between the cars mentioned in his petition, or place his hand in a position of danger upon or about the coupling apparatus at a time when a person of ordinary prudence would have anticipated that the last two cars of the cut might probably be moving towards and against the standing cars in such manner as to injure him.

(30) That plaintiff did not fail, on the occasion in question, to exercise ordinary care for his own safety in any act or omission, as alleged by the defendant.

(30a) That the plaintiff was not guilty of negligence in endeavoring to adjust the knuckle, which he says would not work, rather than endeavoring to arrange for the coupling by means of the apparatus on the other car.

(30b) That negligence on plaintiff's part in the respect mentioned in the next preceding paragraph was not a proximate cause of the injuries sustained by him.

(31) That negligence on the part of plaintiff, as submitted by the court, was not the sole proximate cause of alleged injuries to him.

(32) That negligence on the part of plaintiff, as submitted by the court, was not a contributing cause of alleged injuries to plaintiff.

(33) That the damages, as found, were not subject to diminution by any negligence attributable to plaintiff.

The trial court, upon the verdict, gave judgment for $8,000 in plaintiff's favor, from which the defendant prosecutes this appeal.

[1] Appellant's first, second, and third assignments of error claim that the court erred in not peremptorily directing the verdict in defendant's favor. In the first assignment it is asserted, as a matter of law, that as plaintiff went in between the cars in question and into a position of danger, at a time and under such circumstances as that the other employés of the defendant in said crew

could not reasonably have anticipated that he would be in a position of danger, he should not recover. In the second assignment it is asserted that, as a matter of law, if there was any negligence proximately causing plaintiff's injuries, it was the negligence of plaintiff himself, and was not contributed to, or aided by, any negligence on the part of any of the defendant's employés. In the third assignment the claim for peremptory instruction is based on the proposition that, as a matter of law, and under plaintiff's own testimony, the sole, proximate cause of his own injury was negligence on his part in assuming from the fact that he saw the engine running light on the lead that all the cars of the cut had actually been placed and were standing still.

To sustain the appellant's position in any one of its first three assignments, it would have been necessary for the trial court to have held, and for this court to now hold, that, as a matter of law, the plaintiff, in going between the cars at the time he did, and under the circumstances that he did, was guilty of negligence which was the sole, proximate cause of his injuries. If the appellant was guilty of any negligence at all, however slight, which contributed to cause the injury, the position of appellant would not be tenable, as in that event the damages resulting would be distributed in proportion to the negligence of each. We have read the record containing the evidence of the witnesses with much care, and believe that the issues of negligence of both appellant and appellee were issues properly to be presented to, and determined by, the jury, and that it would have been error for the trial court not to have submitted the issues to the jury. The issues of fact relied upon by appellant and appellee as constituting negligence and proximate cause were specifically and clearly submitted to the jury and findings made, as herein set out, and their findings are not without evidence to support them. We have examined the authorities referred to by appellant under these assignments. It would extend this opinion to too great length and would serve no good purpose to review them. Suffice it to say that, in our opinion, they do not sustain appellant's contention that it would be negligence, as a matter of law, and at the time of moving the cars that caused the injuries, for the appellee to go in between the cars in question, though in a position of danger, in the discharge of an urgent duty, although it be at such time and under such circumstances as that other employés of the appellant in the yard switching crew might not reasonably have anticipated that appellee would be in a position of danger, and regardless of the question of whether appellant was negligent. Now, if it were true, as a matter of law, that any negligence on the part of Barger in going in between the cars to adjust the knuckle would necessarily

relieve the appellant of any possible question of negligence and liability therefor, and if the trial court and this court could say that there is no evidence in the record to sustain the fact of negligence on the part of appellant as found by the jury, and could say that the evidence shows negligence on the part of Barger in performing the service of going in between the cars at the time he did, contrary to the jury's findings, there might be something in appellant's propositions. But we cannot so hold either as propositions of law or fact. The assignments are overruled.

[2] On the trial appellant tendered to the court its specially requested issues Nos. 6, 8, and 9, all of which the trial court refused to submit, and the court's refusal to submit them constituted, respectively, appellant's fourth, fifth, and sixth assignments of error.

The sixth issue reads as follows:

"Did Barger assume from the fact that he saw, if he did, an engine running light on the lead, that all of the cars had been placed?"

The eighth issue reads as follows:

"Was there a custom in defendant's service to the effect that the last cars of a cut should be followed by the engine when switched, rather than kicked, where there was sufficient room to kick the cars in if so desired, and where there was other work for the engine to do before finally coupling up and pulling on the train being made up?"

The ninth issue submitted reads:

"If there was any such custom as that mentioned in the next preceding question, did plaintiff, Barger, rely upon same in going between the cars on the occasion in question?"

Appellant asserts that the sixth special issue tendered was material to the defense, upon the issues of negligence and proximate cause, both of plaintiff and defendant; and its third proposition under the fourth assignment is to the effect that, the trial court nowhere in the charge given having submitted the requested issue, it was error to refuse it. A careful examination of the pleadings of plaintiff and defendant does not seem to us to make the issue as to whether Barger assumed from the fact that he saw an engine running light on the lead that all the cars had been placed a determinative fact that caused him to think it safe for him to go in between the cars to adjust the knuckle. We do not find the issue so sharply presented in the pleadings as to make a finding on the issue, had it been presented to the jury, and a finding made against plaintiff so material as to cause a reversal. The issue which the pleadings tender is that the custom which obtained in making up a train was for the engine in putting in the last cars to move them back attached to the engine, and that, independent of such custom, to run the last cars back detached from the engine was not reasonably safe under the circumstances alleged, and that, when Barger saw the engine running light on the lead, that fact was a signal to him that the cars on the main line would not be disturbed, and that it was up-

on such custom and information conveyed to him by the engine running light on the lead that he relied for safety. The answer denied that such a custom obtained, and, as a matter of course, denying the custom, or even a qualified custom as inquired about in the eighth special issue tendered, necessarily denied that the switch engine running light on the lead was a signal to Barger that the cars on the main line would not be disturbed, and that seems to be the only issue tendered in the pleadings that is at all kindred to the special issues submitted. But, however that may be, on issues submitted, the jury found against defendant's contention as to the custom alleged that it did obtain, and that in violation of the custom the employés of defendant, in causing the last cars of those being handled and put into the string to be kicked with great force and uncontrolled and without warning or signal to plaintiff of any kind, whereby he was caught between the cars, when and where he was in the discharge of a duty to defendant, and that in doing so defendant was guilty of negligence proximately causing plaintiff's injuries, and that while performing said service Barger was exercising ordinary care for his own safety. And, while defendant's answer did not admit a qualified custom of kicking the cars where there was sufficient room, and no issue was made in the pleadings on a qualified custom as submitted in special issues 8 and 9, above, the court sufficiently submitted the issue No. 10b, and the jury found against appellant. We think the court could, without error, have refused to submit to the jury the special findings as to the custom alleged, or what Barger assumed or did not assume from a failure to observe the custom, under the pleadings that, independent of the custom alleged, to kick the cars down the line without warning, where it was known plaintiff might be between the cars performing a duty to defendant in adjusting the knuckles on a defective car, would not be a reasonably safe proceeding, and that it would be negligence to do so; such custom not being of an ultimate or controlling fact, but merely a minor or evidentiary fact on the issues of negligence. The failure of the court to submit defendant's special issue 6, it seems to us, could not have the effect to produce an improper judgment.

We find no reversible error, and the assignments are overruled.

The case is affirmed.